UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| VISA INTERNATIONAL SERVICE ASSOCIATION, Plaintiff, | 2:01-CV-00294-LRH-LRL |
| v. | ORDER |
| JSL CORPORATION, Defendant. | |

Presently before the court is Plaintiff Visa International Service Association's Motion for Summary Judgment (#211[1]). Defendant JSL Corporation has filed an opposition to this motion (#213) to which Plaintiff has replied (#214).

Also before the court is Defendant's Motion in Limine to Strike and Exclude Report and Testimony of Edward Blair and Renewal of Motion in Limine to Strike and Exclude Report and Testimony of Itamar Simonson (#212). Plaintiff has filed an opposition to this motion (#216) to which Defendant has replied (#217).

The final motion before the court is Plaintiff's Motion to Strike Defendant's Reply in Support of Its Motion In Limine or, in the Alternative, for Leave to File a Surreply (#219).

---

[1] References to (#XX) refer to the court's docket.

**I. Facts and Procedural History**

This case is on remand from the Ninth Circuit pursuant to its memorandum disposition vacating and remanding this court's October 22, 2002, order granting Plaintiff's motion for summary judgment. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 90 F. App'x 484 (9th Cir. 2003). In its memorandum opinion, the Ninth Circuit noted that after this court enjoined Defendant from using or registering the mark "EVISA" or the domain name <evisa.com>, the United States Supreme Court decided *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003), which held that to prevail on a Federal Trademark Dilution Act ("FTDA") claim, a plaintiff must establish actual dilution rather that a likelihood of dilution. *Visa*, 90 F. App'x at 485. Accordingly, the Ninth Circuit vacated and remanded "[b]ecause the district court did not have the opportunity to consider the facts of this case in light of the standard the Supreme Court articulated in *Moseley* . . . ." *Id.*

**II. Legal Standard**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

In order to successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

**III. Discussion**

Since the Ninth Circuit remanded this case, Congress amended the FTDA on October 6, 2006. Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, 120 Stat. 1730 (codified as amended at 15 U.S.C. § 1501). Plaintiff argues that because this court determined it was entitled to summary judgment under the FTDA's pre-*Moseley* standard of "likely dilution," pursuant to the law of the case doctrine, this court should again grant summary judgment because Congress has returned the FTDA to the pre-*Moseley* standard. Plaintiff's argument is foreclosed by the Ninth Circuit decision *Jada Toys, Inc. v. Mattel, Inc.*, 496 F.3d 974 (9th Cir. 2007), which held that the pre-amendment FTDA applies to claims filed prior to the enactment of the Trademark Dilution Revision Act of 2006. *Id.* at 980 n.2. In the instant case, Plaintiff filed its complaint on March 15, 2001. Therefore, under *Jada Toys*, this court will apply the pre-amendment FTDA as interpreted by the Supreme Court's *Moseley* decision.

**A. *Moseley v. V Secret Catalogue, Inc.***

*Moseley v. V Secret Catalogue, Inc.* involved a FTDA claim by the owners of the

VICTORIA'S SECRET brand against two owners of a retail store named "Victor's Little Secret."[2] *Moseley*, 537 U.S. at 422-23. The plaintiffs described their brand as "one of moderately priced, high quality, attractively designed lingerie sold in a store setting designed to look like a wom[a]n's bedroom." *Id.* The Court described the defendants' business as selling a "wide variety of items, including adult videos, 'adult novelties,' and lingerie." *Id.* at 424.

The plaintiffs initiated the lawsuit after an army colonel saw an advertisement announcing the opening of defendants' store. *Id.* at 423. The colonel was offended by what he saw as an attempt "to use a reputable company's trademark to promote the sale of 'unwholesome, tawdry merchandise.'" *Id.* As a result, he sent a copy of the advertisement to plaintiffs, who then brought a FTDA claim. *Id.*

The plaintiffs eventually moved for summary judgment on their FTDA claim, which the United States District Court for the Western District of Kentucky granted. *Id.* at 425. The United States Court of Appeals for the Sixth Circuit affirmed. *Id.* at 425. In its opinion, the Sixth Circuit found that

> [w]hile no consumer is likely to go to the [defendants'] store expecting to find Victoria's Secret's famed Miracle Bra, consumers who hear the name 'Victor's Little Secret' are likely automatically to think of the more famous store and link it to the [defendants'] adult-toy, gag gift, and lingerie shop. This, then, is a classic instance of dilution by tarnishing (associating the Victoria's Secret name with sex toys and lewd coffee mugs) and by blurring (linking the chain with a single, unauthorized establishment). Given this conclusion, it follows that Victoria's Secret would prevail in a dilution analysis . . . .

*Id.* at 427.

The Supreme Court reversed, holding that the text of 15 U.S.C. § 1125(c)(1) "unambiguously requires a showing of actual dilution, rather than a likelihood of dilution." *Id.* at 433-34. The Court explained that while the consequences of dilution, such as an actual loss of

---

[2] The defendants' store was originally named "Victor's Secret," but it was renamed "Victor's Little Secret" after the plaintiffs requested that defendants discontinue use of "Victor's Secret" and any variations thereof. *Moseley*, 537 U.S. at 423. The defendants' store was named "Victor's Little Secret" when plaintiffs commenced the suit. *See id.*

sales or profits, need not be proved, "the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish dilution." *Id.* at 434. The Court found that such an association would not reduce the capacity of a famous mark to identify the goods of its owner, as required by the FTDA. *Id.*

Applying its interpretation of § 1125(c)(1), the Court concluded that

> [t]he record in this case establishes that an army officer who saw the advertisement of the opening of a store named "Victor's Secret" did make the mental association with "Victoria's Secret," but it also shows that he did not therefore form any different impression of the store that his wife and daughter had patronized. There is a complete absence of evidence of any lessening of the capacity of the VICTORIA'S SECRET mark to identify and distinguish goods or services sold in Victoria's Secret stores or advertised in its catalogs. The officer was offended by the ad, but it did not change his conception of Victoria's Secret. His offense was directed entirely at [defendants], not at [plaintiffs]. Moreover, the expert retained by [plaintiffs] had nothing to say about the impact of petitioners' name on the strength of [plaintiffs'] mark.

*Id.*

With regard to how a plaintiff might prove dilution under this standard, the Court recognized plaintiffs' argument that evidence of actual "lessening of the capacity of a famous mark to identify and distinguish goods or services . . . may be difficult to obtain." *Id.* at 434. The court responded, however, that "[i]t may well be . . . that direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence–the obvious case is one where the junior and senior marks are identical." *Id.*

**B. Application of *Moseley* to the Present Case**

After conducting a fresh review of the record, this court concludes that Plaintiff is entitled to summary judgment even in light of the heightened standard created by *Moseley*. In its October 22, 2002, order, this court found that "Defendant's use of eVisa is likely to *or has diluted*, by blurring, the distinctive quality of [Plaintiff's] Visa mark. Defendant's use of the famous Visa mark in its domain name *has diluted* the Plaintiff's ability to identify and distinguish its goods and services." (#102 at 22) (emphasis added). While this court's finding that Defendant actually

diluted Plaintiff's mark was not necessary to grant summary judgment under pre-*Moseley* case law, the court now concludes this finding and its accompanying analysis are sound.

The Supreme Court's disagreement with the Sixth Circuit's decision in *Moseley* arose from the lower's court finding of dilution without a showing that use of the name "Victor's Little Secret" actually lessened the capacity of the Victoria's Secret mark to identify its goods and services. However, in the case of Defendant's use of the EVISA mark, the situation is quite different. This court noted in its October 22, 2002, order that

> a "significant purpose of a domain name is to identify the entity that owns the website," and "[u]sing a company's name or trademark as a domain name is also the easiest way to locate the company's web site." *Panavision Int'l*, *L.P.* [*v. Toeppen,* 141 F.3d 1316, 1327 (9th Cir. 1988)].
>
> Therefore, if customers use a search engine to find Plaintiff's Web site and are forced to wade through hundred of Web sites, they may never find Plaintiff's official Web site. *Id.* As "e" is a commonly used prefix to denote the online version of a business, <evisa.com> presents a serious impediment to customers trying to locate the Visa Web site. Finally, permitting Defendant's unauthorized use of the Visa mark would put Plaintiff's name and reputation at the mercy of Defendant. *Id.* at 1327.

*Id.* at 22-23 (footnote omitted).

As this court made clear, Defendant's use of the EVISA mark weakens the ability of the VISA mark to identify its respective goods and services because internet users who enter the domain name <evisa.com> are not brought to Plaintiff's website. Rather, they are brought to Defendant's language services website, which makes use of the VISA trademark with only an added "e." As noted, the use of an "e" before a trademark is commonly used to denote the online version of a business.[3] Thus, internet users entering the <evisa.com> domain name would find, in that instance, the Visa mark does not correspond to its payment card services. This dilution therefore reduces the capacity of the VISA mark to identify the goods and services of its owner.

**C. FTDA's Other Requirements**

In its October 22, 2002, order, this court made four findings corresponding to the four-part

[3] *See, e.g.*, <etoyota.com>, <ehonda.com>, <ekelloggs.com>, and <enordstrom.com>.

FTDA analysis set forth in *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999), that is, (1) Plaintiff's mark is famous, (2) Defendant is making commercial use of the mark in commerce, (3) Defendant's use began after Plaintiff's mark became famous, and (4) Defendant's use presents a likelihood of dilution of the distinctive value of the mark. (#102 at 13-24).

The Ninth Circuit vacated this court's order on the basis of *Moseley*'s holding that a plaintiff must establish actual dilution rather that a likelihood of dilution. As such, this court was required to reconsider this case in order to decide whether Plaintiff could show actual dilution. As discussed above, Plaintiff has met this standard as a matter of law.

Three other elements under the four-part *Avery* test remain, however. That is, in order to succeed in its FTDA claim, Plaintiff must still show that (1) its mark is famous, (2) Defendant is making commercial use of the mark in commerce, and (3) Defendant's use began after Plaintiff's mark became famous. However, in contrast to its modification of the dilution element, the *Moseley* decision did not change a court's inquiry in regard to the other *Avery* elements. Therefore, those three elements are subject to the law of the case doctrine.

The Ninth Circuit recently discussed the law of the case doctrine in *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007):

> "Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." For the law of the case doctrine to apply, "the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'"

*Id.* at 986 (citations omitted). The doctrine "has developed to 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478, at 637-38 (2002)).

The law of the case doctrine also has exceptions. A district court's decision to apply the doctrine will be deemed an abuse of discretion if "(1) the first decision was clearly erroneous; (2)

an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452-53 (9th Cir. 2000).

The court concludes that the law of the case doctrine applies to the second and third parts of the *Avery* test: (2) Defendant is making commercial use of the mark in commerce and (3) Defendant's use began after Plaintiff's mark became famous. With the regard to these elements, none of the exceptions to the law of the case doctrine apply. This court's first decision was not clearly erroneous, an intervening change in the law has not occurred, the evidence on remand is not substantially different, other (relevant) changed circumstances do not exist, and a manifest injustice would not otherwise result.

In regard to the third element, however, one exception to the law of the case doctrine does apply: the evidence on remand is substantially different. Since the Ninth Circuit remanded this case, Plaintiff has presented new evidence to support its position that its mark is famous. Therefore, this court will apply a fresh analysis to the evidence presented in support and in opposition to the original motion for summary judgment as well as the new evidence Plaintiff presents in its current motion.

The FTDA sets forth eight nonexclusive factors that a court may consider in determining whether a mark is distinctive and famous: (1) the degree of inherent or acquired distinctiveness of the mark; (2) the duration and extent of the use of the mark in connection with the goods or services with which the mark is used; (3) the duration and extent of advertising and publicity of the mark; (4) the geographical extent of the trading area in which the mark is used; (5) the channels of trade for the goods or services with which the mark is used; (6) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought; (7) the nature and extent of use of the same or similar marks by third parties; and (8) whether the mark is federally registered. 15 U.S.C. § 1225(c)(1)

With regard to the first factor–the degree of inherent or acquired distinctiveness of the mark–the court finds that the VISA mark has a high degree of inherent or acquired distinctiveness. As this court discussed in its October 22, 2002, order:

> Trademarks that are inherently distinctive are "afforded the greatest protection, because their intrinsic nature serves to identify a particular source of a product." *Official Airline Guides v. Goss*, 6 F.3d 1385, 1390 (9th Cir. 1993) *citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). A trademark is inherently distinctive when it is suggestive, arbitrary or fanciful. *Official Airline*, 6 F.3d at 1390. A suggestive mark requires imagination to make a connection between the mark and an attribute of the goods or services to which it is applied. *Id.* at 1391. An arbitrary mark consists of a common word or words that are not descriptive of the goods or services to which the marks is applied. *Id.* at 1390-91. A fanciful mark is a coined term, such as Kodak. *Id.*
> 
> Visa International's Visa mark is inherently distinctive when applied to Visa International's goods and services. The dictionary meaning of the word "visa" is "an endorsement made by an authorized representative of one country upon a passport issued by another, permitting the passport holders entry into or transit through the country making the endorsement." *Webster's New Unabridged Dictionary* (1996). The Visa mark is arbitrary when used in connection with the goods and services provided by Visa International, such as financial and banking services, because the dictionary or common meaning of "visa" does not describe any characteristic of these goods and services.
> 
> The Visa mark has previously been found to be inherently distinctive. *Visa International Services Association v. Bankcard Holders of Arizona*, 211 U.S.P.Q. 28, 40 (N.D. Cal. 1981) ("A strong mark, such as the Visa trademark, is considered distinctive, arbitrary or fanciful. . . . The trademark, VISA, is a strong mark which is entitled to protection against . . . the dilution of the value of its trademark."); *Visa International Service Association v. VISA/Master Charge Travel Club*, 213 U.S.P.Q. 629, 635 (N.D. Cal. 1981) ("A strong mark, such as the VISA trademark, is considered distinctive, arbitrary or fanciful").

In its opposition to Plaintiff's original motion for summary judgment, Defendant argues that "visa" is not a distinctive mark because it is a common word. Defendant bases this argument upon the Second Circuit opinion *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208 (2d Cir. 1999), which found that "[m]any famous marks are of the common or quality-claiming or prominence-claiming type . . . such as American, National, Federal, Federated, First, United, Acme, Merit or Ace. It seems most unlikely that the [FTDA] contemplates allowing the holders of such common, albeit famous, marks to exclude all new entrants." *Id.* at 216. Plaintiff also offers evidence that the term "visa" is very common on the internet, both in website names and in individual web pages. Plaintiff notes that only a few of these web pages and website names have anything to do

with Plaintiff's products or services.

In response, Plaintiff argues that Defendant's argument fails because common words can be distinctive when used to identify otherwise unrelated goods or services. The court agrees. First, the court doubts whether "visa" is a common, quality-claiming, or prominence-claiming word as described by the Second Circuit. Moreover, the court agrees with the discussion in *McCarthy on Trademarks and Unfair Competition* regarding the "common word fallacy":

> Some courts occasionally make loose reference to the fact that plaintiff's mark is a "common word" found in the dictionary and is therefore "weak." But this is a non-sequitur. That a word is in common usage is quite irrelevant. The issue is whether that word is in common usage as a mark for similar goods or services such that its distinctiveness in the customer's mind is blurred. Some of the strongest marks are "common words" found in the dictionary. For example, SHELL, CAMEL, and APPLE. They are intrinsically strong because they are arbitrary when applied to gasoline, cigarettes and computers, respectively.

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:87 (4th ed. 2007); *see also Wal-Mart Stores, Inc. v. Samara Bros.*, *Inc.*, 529 U.S. 205, 210-11 (2000) (describing the CAMEL mark as arbitrary, and therefore distinctive, when used to identify cigarettes). Further, evidence indicating "visa" is frequently used on the internet is irrelevant when there is no showing that the term is used commercially. *See* 15 U.S.C. § 1125(c)(4) ("The following shall not be actionable under this section: . . . Noncommercial use of a mark."

The second factor in determining whether the VISA mark is famous is the duration and extent of use of the mark in connection with the goods or services with which the mark is used. The court finds that this factor weighs heavily in favor of a finding of fame. Plaintiff has presented evidence that it has used the VISA mark for more than thirty years. ((#40-9), Ex. A, Service Mark Principal Register). In 2006, U.S. sales involving VISA brand cards amounted to $1.3 trillion. ((#211-2), Ex. B, Visa USA Annual Report 2006 at 5). Moreover, VISA brand cards are accepted at more than 6.3 million merchant locations in the United States. *Id.*

The third consideration in determining whether the VISA mark is famous is the duration

and extent of the advertising and publicity of the mark.  Plaintiff has widely promoted and advertised the mark for more than twenty-five years in print, on the internet, and in other media.  ((#40-9), Declaration of Gerry Sweeney at ¶ 8); ((#40-9), Ex. B, U.S. Competitive Media Spending at V0582-86).  During the four-year period from 1997 through 2000, Plaintiff spent more than $1 billion on advertising in the United States.  ((#40-9), Ex. B, U.S. Competitive Media Spending at V0582-85).  Further, in 2006 there were 503 million VISA brand cards in the United States and 6.3 million merchant locations that accepted VISA brand cards.  ((#211-2), Ex. B, Visa USA Annual Report 2006 at 5).  Given this evidence, the court concludes that this factor weighs strongly in favor of a finding that VISA is a famous mark.

The fourth consideration in determining whether the VISA mark is famous is the geographical extent of the trading area in which the mark is used.  The VISA mark has been used in each of the fifty states, in more than 300 countries and territories, and on the internet.  ((#40-9), Declaration of Gerry Sweeney at ¶ 3).  Accordingly, the factor also weighs strongly in favor of a finding of fame.

The fifth consideration in determining whether the VISA mark is famous is the channels of trade for the goods or services in which the mark is used.  The VISA mark is used in numerous channels of trade for the purchase of goods and services, including 6.3 million merchant locations in the United States that accepted VISA brand cards in 2006.  ((#211-2), Ex. B, Visa USA Annual Report 2006 at 5).  During this period, U.S. sales with VISA brand cards amounted to $1.3 trillion dollars.  *Id.*

The sixth consideration in determining whether the VISA mark is famous is the degree of recognition of the mark in the trading areas and channels of trade used by the owner of the mark and the person against whom the injunction is sought.  A survey authored by Plaintiff's expert Dr. Itamar Simonson found that 99% of respondents, who were sampled from households with telephones in the United States, were aware of the VISA brand of payment cards.  ((#40-10),

Simonson Report at 5, 11). Dr. Simonson also found that 85% of respondents identified VISA when asked what kinds of payment cards they could think of. *Id.* at 8, 10. Accordingly, this factor weighs greatly in favor of a finding that the VISA mark is famous.

The seventh consideration in determining whether the VISA mark is famous is the nature and extent of use of the same or similar marks by third parties. Plaintiff argues in its current motion for summary judgment that "Visa International is engaging in substantially exclusive use of the *Visa* mark. Indeed, JSL has failed to present any evidence of any third-party use of *Visa* as a mark by others, let alone substantial third-party use." This argument is a *non sequitur* because it is Plaintiff who brought the motion for summary judgment, and it is therefore Plaintiff's burden to show it is entitled to judgment as a matter of law. Accordingly, this factor does not weigh in favor or against a finding that the VISA mark is famous.

The eighth factor, "[w]hether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register" also weighs in favor of a finding of fame. As of April 27, 2007, Plaintiff owned approximately fifty-six federal trademark registrations on the principal register of the United States Patent and Trademark Office containing the word VISA. ((#221-2), Ex. A, Trademark Electronic Search System).

While it causes this court some pause that Plaintiff has not submitted any evidence regarding the extent to which Plaintiff is engaging in substantially exclusive use of VISA, the court finds that Plaintiff's strong showing on the other seven factors compels a finding that the VISA trademark is distinctive and famous as a matter of law.[4]

Accordingly, because Plaintiff has shown there is no genuine issue in regard to whether (1) its mark is famous, (2) Defendant is making commercial use of the mark in commerce, (3) Defendant's use began after Plaintiff's mark became famous, and (4) Defendant's use will reduce

---

[4] The court's neutral finding regarding whether Plaintiff is engaging in substantially exclusive use of the VISA trademark should not be heavily weighed against Plaintiff given the inherent difficulty of proving the nonexistence of a fact.

the capacity of the VISA mark to identify the goods and services of Plaintiff, the court concludes that Plaintiff is entitled to judgment as a matter of law.[5]

**IV. Defendant's Motion in Limine to Strike and Exclude Report and Testimony of Edward Blair and Renewal of Motion in Limine to Strike and Exclude Report and Testimony of Itamar Simonson**

Defendant has brought a motion to strike the testimony of Edward Blair and Itamar Simon, which Plaintiff has offered in support of its current motion for summary judgment. Defendant argues its renewed motion to strike Itamar Simonson's testimony has not been previously ruled on because an evidentiary hearing was never conducted on its previous motion. This argument is without merit. This court denied Defendant's motion to strike Dr. Simonson's testimony in its November 7, 2006, order ((#203 at 3-5). This court was not required to conduct an evidentiary hearing before this order. *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994).

---

[5] Defendant, in its original opposition to Plaintiff's motion for summary judgment, offered the Declaration of Bradley L. Booke and an accompanying opinion letter. Mr. Bradley states in his declaration that "his opinion [as stated in the opinion letter] was that [Defendant's] use of the service mark EVISA in connection with translation and related services rendered via the Internet, did not infringe or dilute any rights of Visa International in the VISA trademark." Defendant attached a copy of the opinion letter in support of its opposition. The letter sets out Mr. Bagley's analysis regarding whether "[Defendant's] use of EVISA and EVISA.com . . . infringe[s] the trademark rights of Visa Intl. . . . ."

The court concludes that Mr. Bradley's declaration and its accompanying opinion later are not sufficient to create a genuine issue of fact. First, Mr. Badley's opinion and analysis are not relevant under Federal Rules of Evidence Rule 401. Rule 401 states, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The letter upon which Mr. Badley bases his opinion only purports to discuss trademark infringement, not trademark dilution.

Second, even if Mr. Bradley's letter analyzed trademark dilution, his opinion and accompanying letter are not helpful to the trier of fact. Rule 702 states, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Mr. Bradley's opinion letter considers several factors he finds relevant to the issue of trademark infringement and concludes that Defendant's use of EVISA and EVISA.com do not infringe Plaintiff's trademark rights. This type of legal analysis does not shed any light on the facts concerning Plaintiff's claim, as required by Rule 702. An ultimate question of law such as this is well within the court's expertise and does lend itself to expert testimony under Rule 702.

Therefore, that order is the law of the case and will not be reconsidered.

Defendant has also moved to strike the testimony of Edward Blair. Plaintiff offered Dr. Blair's testimony as proof that there is an actual association between the EVISA mark and the VISA mark. Plaintiff intended this testimony to support its argument that the Defendant has committed "dilution by blurring,"[6] a requirement taken from the FTDA as amended by the Trademark Dilution Revision Act of 2006. As stated above, the amended FTDA is not retroactive to Plaintiff's claim. Therefore, this court did not need to consider Dr. Blair's testimony in order to conclude Plaintiff is entitled to summary judgment. As such, Defendant's motion to strike Dr. Blair's testimony is denied as moot.

**V. Plaintiff's Motion to Strike Defendant's Reply in Support of Its Motion In Limine or, in the Alternative, for Leave to File a Surreply**

The final motion before the court is Plaintiff's Motion to Strike Defendant's Reply in Support of Its Motion In Limine or, in the Alternative, for Leave to File a Surreply. Because this court finds Plaintiff's surreply helpful in adjudicating Defendant's Motion in Limine, the court grants Plaintiff's motion for leave to file a surreply.

**VI. Defendant's FTDA Counterclaim**

Plaintiff has also moved for summary judgment on Defendant's counterclaims for trademark infringement. Plaintiff argues that "if [Defendant's] use of eVisa dilutes [Plaintiff's] rights in Visa, then [Defendant] cannot establish valid protectible trademarks rights in eVisa and, therefore, cannot succeed." Plaintiff also cites to this court's February 11, 2003, order to show that this court already granted summary judgment to Plaintiff on Defendant's counterclaim.. The court agrees that it has already decided this issue. *See* ((#130) February 11, 2003, order at 6) ("[I]n light

---

[6] Whether there is "any actual association between the [defendant's] mark or trade name and [plaintiff's] famous mark" is one of the factors a court may consider in determining whether Defendant has committed dilution by blurring.

of the Court's Order granting judgment in favor of Plaintiff on its dilution claim, the Defendant's counterclaims for trademark infringement cannot succeed."). Accordingly, that decision is the law of the case and compels this court to reaffirm its order granting Plaintiff's current motion for summary judgment on Defendant's counterclaims.

**VII. Conclusion**

Plaintiff has met its burden under Rule 56 of the Federal Rules of Civil Procedure and the Supreme Court's decision in *Mosley* of showing that it is entitled to judgment as a matter of law on its FTDA claim. The evidence Defendant offered in opposition to Plaintiff's motion is not sufficient to create a genuine issue of material fact.

With regard to Defendant's counterclaims, this court ruled in its February 11, 2003, order that Defendant's trademark infringement claims cannot succeed in light of the court's grant of summary judgment to Plaintiff on its FTDA claim. Because Plaintiff has again shown that it is entitled to summary judgment on its FTDA claim, this court's previous order is the law of the case and compels this court to again grant Plaintiff summary judgment on Defendant's counterclaims.

IT IS THEREFORE ORDERED that Plaintiff Visa International Service Association's Motion for Summary Judgment (#211) is GRANTED

IT IS FURTHER ORDERED that Defendant's Motion in Limine to Strike and Exclude Report and Testimony of Edward Blair and Renewal of Motion in Limine to Strike and Exclude Report and Testimony of Itamar Simonson (#212) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Reply in Support of Its Motion In Limine or, in the Alternative, for Leave to File a Surreply (#219) is GRANTED.

///

///

///

IT IS FURTHER ORDERED that Defendant is hereby enjoined from using or registering the EVISA mark and from using the <evisa.com> domain name. Defendant shall deactivate the website at <evisa.com>.

The court clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED this 27th day of December, 2007.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE