UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| VISA INTERNATIONAL SERVICE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | 2:01-CV-00294-LRH-LRL |
| v. | ) ) | ORDER |
| JSL CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

This case is on remand from the Ninth Circuit for the limited purpose of allowing this court to entertain Plaintiff Visa International Service Association's motion for relief from a final judgment. Because Plaintiff has shown that applying this court's December 27, 2007, order (#220[1]) is no longer equitable, the court grants the motion.

**I.      Facts and Procedural History**

This matter has an extensive procedural history, having been twice disposed of on summary judgment and remanded by the Ninth Circuit. Because the parties are well versed in both the factual and procedural history of this matter, the court will recount the facts of this case only as they relate to the pending motion for relief from a final judgment.

---

[1]Refers to the court's docket

1    On October 22, 2002, this court granted partial summary judgment in favor of Plaintiff on

2    its trademark dilution claim.  In its order, the court found that Plaintiff had shown as a matter of

3    law that Defendant JSL Corporation's use of the EVISA mark likely diluted Plaintiff's VISA mark.

4    The court therefore enjoined Defendant from using or registering the EVISA mark or the

5    <evisa.com> domain name.  Defendant appealed.  On January 16, 2004, the Ninth Circuit

6    remanded this case in a memorandum disposition.  *Visa Int'l Serv. Ass'n v. JSL Corp.*, 90 F. App'x

7    484 (9th Cir. 2003).  In its memorandum, the Ninth Circuit noted that after this court issued its

8    October 22, 2002, order, the United States Supreme Court decided *Moseley v. V Secret Catalogue,*

9    *Inc.*, 537 U.S. 418 (2003), which held that to prevail on a Federal Trademark Dilution Act

10   ("FTDA") claim, a plaintiff must establish actual dilution rather than a likelihood of dilution.  *Visa*,

11   90 F. App'x at 485.  Accordingly, the Ninth Circuit vacated and remanded the case to allow this

12   court to consider the case's facts under *Moseley.  Id.*

13   After the Ninth Circuit's remand, on October 6, 2006, the President signed into law the

14   Trademark Dilution Revision Act of 2006 (TDRA), Pub. L. No. 109-312, 120 Stat. 1730 (codified

15   as amended at 15 U.S.C. § 1501 (2006)).  Although the TDRA was in effect at the time, on

16   December 27, 2007, this court again granted summary judgment to Plaintiff on its trademark

17   dilution claim under the FTDA.[2]  (#220.)  The court did so pursuant to *Jada Toys, Inc. v. Mattel,*

18   *Inc.*, 496 F.3d 974 (9th Cir. 2007) in which the Ninth Circuit applied the FTDA to a case filed

19   before the TDRA's enactment in 2006.  *See id.* at 980 n.2.  Following the Ninth Circuit's

20   instruction, this court also applied the FTDA because Plaintiff filed this suit in 2001.  On

21   February 1, 2008, Plaintiff filed a motion for relief from a final judgment based on this court's

22

23   [2]In its motion for summary judgment, Plaintiff asked this court to dismiss its other claims for trademark
     infringement under the Lanham Act, unfair competition under the Lanham Act, cybersquatting under the

24   Lanham Act, common law trademark infringement, deceptive trade practices under the Nevada Revised
     Statutes, and intentional interference with prospective economic advantage.  Although the court did not state

25   in its December 27, 2007, order that it was dismissing these claims, the court's subsequent entry of judgment
     demonstrates that the only claim left in this case is Plaintiff's claim for trademark dilution.

26

1   "mistake" in applying the FTDA rather than the TDRA.  (#226.)

2        After all these events, on February 21, 2008, the Ninth Circuit amended its original *Jada*

3   *Toys* opinion.  *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008).  Within its

4   opinion, the court applied the TDRA to a trademark dilution claim even though the plaintiff filed

5   suit before the TDRA's enactment.  *Id.* at 634 n.2.  In a February 28, 2008, memorandum (#233),

6   this court informed the Ninth Circuit that it wished to entertain Plaintiff's motion for relief from a

7   final judgment in light of the Ninth Circuit's amended *Jada Toys* opinion.  In response, the Ninth

8   Circuit remanded the case to allow this court to consider Plaintiff's motion for relief from a final

9   judgment.  (#234.)

10  **II.      Legal Standard**

11       Before this court addresses the merits of Plaintiff's motion for relief from a final judgment,

12  the court must first clarify the basis upon which it will render this order.  In its May 2, 2008, order,

13  the Ninth Circuit remanded this case "to the district court for the limited purpose of enabling the

14  district court to entertain [Plaintiff's] motion filed pursuant to Fed. R. Civ. P. 60(b)(6) . . . ."

15  (#234.)  Although the Ninth Circuit undoubtedly remanded for consideration of a Rule 60(b)(6)

16  motion based upon this court's indication that it desired to consider Plaintiff's motion under Rule

17  60(b)(6) (*see* Feb. 28, 2008, Mem. (#233) at 2:10-12), it has since become apparent to this court

18  that Plaintiff's motion is more properly considered under Rule 60(b)(5).  That subsection of Rule

19  60(b) allows this court to relieve a party from a final judgment, order, or proceeding because "the

20  judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been

21  reversed or vacated; or applying it prospectively is no longer equitable . . . ."  Fed. R. Civ. P.

22  60(b)(5).

23       Rule 60(b)(5) creates an exception to the doctrine of claim preclusion by providing parties

24  with standards under which they may attack final judgments.  *Bellevue Manor Associates v. United*

25  *States*, 165 F.3d 1249, 1252 (9th Cir. 1999).  "[T]he Rule codifies the courts' traditional authority,

26

1    inherent in the jurisdiction of the chancery, to modify or vacate the prospective effect of their

2    decrees." *Id.* (citation and internal quotation marks omitted).  A court may apply 60(b)(5) when

3    there is "a significant change in facts or law [that] warrants revision of the decree," and the

4    proposed modification is "suitably tailored to the changed circumstance." *Id.* at 1255.

5          For instance, the Ninth Circuit has affirmed a district court's use of Rule 60(b)(5) to grant a

6    party relief from an injunction after an intervening change of law.  In that case, *Bellevue Manor*

7    *Associates v. United States*, a district court issued an injunction requiring the Department of

8    Housing and Urban Development (HUD) to rely solely on Automatic Annual Adjustment Factors

9    in adjusting rent subsidies.  *Id.* at 1251.  Reliance on the Automatic Annual Adjustment Factors

10   resulted in higher rents for certain landlords than the landlords would have received under an

11   alternate system HUD sought to use.  *See id.* at 1251, 1254.  After the district court rendered its

12   decision, the Supreme Court, in a different case, found that HUD was not required to rely solely on

13   the Automatic Annual Adjustment Factors in adjusting rent subsidies.  *Id.* at 1252.  Based upon

14   this intervening case law, the district court granted HUD relief from the injunction under Rule

15   60(b)(5).  *Id.*  The Ninth Circuit affirmed, reasoning that the equities in the case clearly tipped in

16   favor of HUD.  *Id.* at 1257.  Specifically, the court found that HUD's loss of funds to support other

17   rent subsidy programs and the unfair preferential treatment of landlords easily satisfied the 60(b)(5)

18   standard.  *Id.*

19         Rule 60(b)(6), in contrast, is residual to the other grounds listed in Rule 60(b) and is

20   reserved for "extraordinary circumstances." *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement &*

21   *Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986).  Most important to this case, the Ninth Circuit

22   has stated that "[c]lause 60(b)(6) is residual and must be read as being exclusive of the preceding

23   clauses." *Id.* (internal quotation marks omitted).

24         In the present case, the Ninth Circuit's instruction that Rule 60(b)(6) must be based on

25   grounds other than those listed in the preceding clauses of Rule 60(b) is important because this

26

1  case appears to fall clearly under Rule 60(b)(5).  Similar to HUD in *Bellevue*, Plaintiff seeks

2  modification of this court's December 27, 2007, order to reflect an intervening change in law.

3  Although the court recognizes its duty to follow the letter of the Ninth Circuit's mandate, denial of

4  Plaintiff's motion under Rule 60(b)(6) would result only in an unnecessary waste of time and

5  judicial resources.  Thus, this court will apply Rule 60(b)(5) to the instant motion for relief from a

6  final judgment.

7  **III.   Discussion**

8  Plaintiff has shown it is entitled to relief from this court's December 27, 2007, order.  Since

9  the court issued that order, the Ninth Circuit held the TDRA applies to a case even when a

10  plaintiff's suit was filed before the TDRA's enactment.  *See Jada Toys, Inc. v. Mattel, Inc.*, 518

11  F.3d 628, 631, 634 n.2 (9th Cir. 2008).  These circumstances reflect a significant change in the law

12  that warrant revision of this court's order.  *See Bellevue*, 165 F.3d at 1255.  Moreover, applying the

13  TDRA is suitably tailored to the changed circumstances, as the amended *Jada Toys* opinion is now

14  controlling precedent.  Therefore, the court grants Plaintiff relief from this court's December 27,

15  2007, order by applying the TDRA to Plaintiff's May 1, 2007, motion for summary judgment

16  (#211).

17  A court must grant summary judgment if the pleadings and supporting documents, when

18  viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as

19  to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

20  Civ. P. 56(c).  An issue as to any material fact is only "genuine" if the evidence regarding the

21  disputed fact is "such that a reasonable jury could return a verdict for the nonmoving party."

22  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of

23  evidence in support of the plaintiff's position will be insufficient [to preclude summary judgment] .

24  . . ." *Id.*  "Because of the intensely factual nature of trademark disputes, summary judgment is

25  generally disfavored in the trademark arena." *Jada Toys*, 518 F.3d at 632.

26

5

1    In its motion for summary judgment, Plaintiff argues that because this court determined

2  Plaintiff was entitled to summary judgment under the pre-*Moseley* standard of "likely dilution,"

3  pursuant to the law of the case doctrine, this court should again grant summary judgment because

4  Congress has now restored the likelihood of dilution standard by enacting the TDRA.

5    **A.  Law of the Case Doctrine**

6    The Ninth Circuit recently explained law of the case doctrine in *Hydrick v. Hunter*:

7    Under the law of the case doctrine, a court is ordinarily precluded from reexamining an
       issue previously decided by the same court, or a higher court, in the same case.  For the
8    law of the case doctrine to apply, the issue in question must have been decided explicitly
       or by necessary implication in [the] previous disposition.

9

10  500 F.3d 978, 986 (9th Cir. 2007) (citations and internal quotation marks omitted).  The doctrine

11  has developed to maintain consistency and avoid reconsideration of matters once decided during

12  the course of a single, continuing lawsuit.  *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005).

13    The law of the case doctrine, however, comes with some exceptions.  A district court's

14  decision to apply the doctrine will be deemed an abuse of discretion if "(1) the first decision was

15  clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was

16  substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would

17  otherwise result."  *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000).  Thus

18  an issue arises whether, between this court's October 22, 2002, grant of summary judgment and

19  the enactment of the TDRA, there has been an intervening change of law.  The simple answer to

20  this question is, of course, yes.  Since this court entered its order granting summary judgment to

21  Plaintiff, the Supreme Court in *Moseley* held that courts must apply to trademark dilution claims a

22  standard of actual dilution rather than a likelihood of dilution.  *Moseley v. V Secret Catalogue*,

23  *Inc.*, 537 U.S. 418, 433 (2003).  However, because the TDRA has again changed the applicable

24  law, the crux of the issue becomes whether there has been a change in trademark dilution law from

25  when it was applied in this court's February 11, 2003, order and the law as it exists today.

26

1    Congress enacted the TDRA primarily to return trademark dilution law back to a standard

2    of "likely dilution" of a trademark after the Supreme Court held that trademark dilution required

3    "actual dilution" and economic harm.  *See Louis Vuitton Malletier S.A. v. Haute Diggity Dog,*

4    *LLC*, 507 F.3d 252, 264 n.2 (4th Cir. 2007); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477

5    F.3d 765, 766 (2d Cir. 2007).  The TDRA also altered the FTDA by setting forth four

6    nonexclusive factors courts may consult in determining whether a claimant owns a "famous mark,"

7    which the TDRA defines as a mark "widely recognized by the general consuming public of the

8    United States as a designation of source of the goods or services of the mark's owner."  *See* 15

9    U.S.C. § 1125(c)(2)(A) (2006).  Moreover, the TDRA altered the FTDA by listing six

10   nonexclusive factors a court may consider in determining whether a defendant's mark is likely to

11   cause dilution by blurring.  *See* 15 U.S.C. § 1125(c)(2)(B).

12   Because the TDRA has made several changes to the FTDA's statutory language, the court

13   finds it inappropriate under the law of the case doctrine to adopt its prior grant of summary

14   judgment *in toto*.  Rather, the court will consider each part of the TDRA to determine which

15   elements are amenable to the law of the case doctrine.[3]

16   **B.  Trademark Dilution Under the TDRA**

17   In *Jada Toys*, the Ninth Circuit announced a four-prong test that a plaintiff must meet to

18   show trademark dilution under the TDRA: "(1) the mark is famous and distinctive; (2) the

19   defendant is making use of the mark in commerce; (3) the defendant's use began after the mark

20   became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or

21   dilution by tarnishment."  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).

22

23   [3]Defendant's argument that this court should decline to apply the law of the case doctrine because
24   Plaintiff has offered new evidence, specifically the report of Dr. Edward Blair, is well taken.  Plaintiff offers
     Dr. Blair's report as evidence that there is actual association between the VISA and EVISA marks.  (Mot. for
25   Summ. J. (#211) at 18:28-19:5.)  However, because the court finds that a change of law has occurred with
     regard to this factor, it is not necessary to apply the "new evidence" exception to the law of the case doctrine.

26

### 1.     Fame

Both the FTDA and TDRA require a claimant to be an owner of a "famous mark." However, the TDRA also includes a definition for a "famous mark," stating that such a mark is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A) (2006).  The TDRA also states that "[i]n determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following: (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties. (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.  (iii) The extent of actual recognition of the mark. (iv) Whether the mark was [federally registered]." *Id.*

In contrast, the FTDA set forth eight nonexclusive factors a court may consider in determining whether a mark is "distinctive and famous":

> (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark was [federally registered].

15 U.S.C. § 1125(1) (2000) (repealed October 6, 2006).  In its October 22, 2002, order, this court found that all eight of these factors weighed in favor of a finding that the VISA mark is famous.

The court recognizes that under both the FTDA and TDRA, the factors defining fame are nonexclusive.  However, because the TDRA factors have changed both in number and substance from the FTDA factors, the court finds that an intervening change in the law has occurred.  Therefore, the court will not apply the law of the case doctrine to the TDRA's

1   element of fame.

2      The first factor defining fame under the TDRA is "[t]he duration, extent, and

3   geographic reach of advertising and publicity of the mark, whether advertised or publicized

4   by the owner or third parties." 15 U.S.C. § 1125(c)(2)(A)(i) (2006).  Plaintiff has widely

5   promoted and advertised the VISA mark for more than twenty-five years in print, on the

6   internet, and in other media.  (Sweeney Decl. (#40) at ¶ 8.)  During the four-year period from

7   1997 through 2000, Plaintiff spent more than $1 billion on advertising in the United States.

8   (*Id.*)  With regard to geographical reach, the VISA mark has been used in each of the fifty

9   states, in more than 300 countries and territories, and on the internet.  (*Id.* at ¶ 3).  Given this

10  evidence, the court concludes that this factor weighs strongly in favor of a finding that VISA

11  is a famous mark.

12      The second factor, "[t]he amount, volume, and geographic extent of sales of goods or

13  services offered under the mark," is clearly met here.  15 U.S.C. § 1125(c)(2)(A)(ii).

14  Plaintiff has presented evidence that in 2006, VISA brand payment cards were used in $1.3

15  trillion of U.S. sales.  (Visa USA Annual Report 2006 (#211), Ex. B at 7.)  Moreover, VISA

16  brand cards are accepted at more than twenty-four million locations worldwide, including

17  more than 6.3 million locations in the United States.  (*Id.* at 5.)

18      The third factor is "[t]he extent of actual recognition of the mark."  15 U.S.C.

19  § 1125(c)(2)(A)(iii).  A survey authored by Plaintiff's expert Dr. Itamar Simonson found that

20  99 percent of respondents, who were taken from a sample encompassing the entire United

21  States, were aware of the VISA brand of payment cards.  (Simonson Report (#40) at 11.)[4]

22  _____

23  [4]In its November 7, 2006, order, this court denied Defendant's motion to exclude Dr. Simonson's expert
    opinion.  (Nov. 7, 2006, Order (#203) at 3-5).  In its opposition to Plaintiff's motion for summary judgment,
24  Defendant argues this court should again consider the admissibility of Dr. Simonson's opinion because the
    court did not consider the opinion's admissibility under the TDRA, and this court did not hold an evidentiary
25  hearing before deeming the Dr. Simonson's expert opinion admissible.  Defendant's arguments are without
    merit.  The relevance of Dr. Simonson's testimony is not affected by any of the changes to trademark dilution
26  law enacted by the TDRA.  Moreover, this court was not required to conduct an evidentiary hearing before

1    Dr. Simonson also found that 85 percent of respondents identified VISA when asked, "Now,

2    please tell me which brands of payment cards can be used to buy goods and services at <u>more</u>

3    than one type of merchant.  These include credit cards, charge cards, debit or ATM cards and

4    prepaid cards.  Which payment card brand names can you think of?"  (*Id.* at 8, 10.)

5    Therefore, the third factor weighs heavily in favor of a finding of fame.

6       The fourth factor, "[w]hether the mark was registered under the Act of March 3, 1881,

7    or the Act of February 20, 1905, or on the principal register[,]" is met here.  15 U.S.C.

8    § 1125(c)(2)(A)(iv).  As of April 27, 2007, Plaintiff owned approximately fifty-six federal

9    trademark registrations containing the mark VISA.  (Trademark Electronic Search System

10    Results (#211), Ex. A.)  As such, this factor weighs in favor of a finding that the VISA mark

11    is famous.

12       Given that all four factors weigh in favor of a finding that Plaintiff's mark is famous,

13    and Defendant has failed to present any evidence in opposition, the court finds that the VISA

14    mark is famous as a matter of law.

15       **2.**      **Distinctiveness**

16       The TDRA adds a separate requirement to trademark dilution law that the claimant's

17    mark "is distinctive, inherently or through acquired distinctiveness."  15 U.S.C. § 1125(c)(1).

18    There are five categories of trademarks: (1) generic, (2) descriptive, (3) suggestive, (4)

19    arbitrary, and (5) fanciful.  *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 760 (9th Cir.

20    2006).  At one end of the spectrum, generic marks give the general name of a product and

21    embrace an entire class of products.  *Id.*  At the other end of the spectrum, suggestive,

22    arbitrary, and fanciful marks are deemed inherently distinctive.  *Id.*  The court agrees with the

23    analysis in its October 22, 2002, order that "[t]he Visa mark is arbitrary when used in

24

25

26    deeming Dr. Simonson's expert opinion admissible.  *See Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994).

1  connection with the goods and services provided by [Plaintiff], such as financial and banking

2  services, because the dictionary or common meaning of 'visa' does not describe any

3  characteristic of these goods and services." (Oct. 22, 2002, Order (#102) at 15:23-16:2); *see*

4  *also Visa Int'l Service Ass'n v. Bankcard Holders of Ariz.*, 211 U.S.P.Q. 28, 40 (N.D. Cal.

5  1981) ("A strong mark, such as the VISA trademark, is considered distinctive, arbitrary or

6  fanciful."). As such, the court finds that the VISA mark is inherently distinctive as a matter

7  of law.

8      **3.    Commercial Use**

9      The TDRA also requires an alleged diluter to "commence[] use of a mark or trade

10  name in commerce." 15 U.S.C. § 1125(c)(1). In its October 22, 2002, order, this court

11  considered the same element. (Oct. 22, 2002, Order (#102) at 19:9-23.) The court reaffirms

12  its prior finding that Defendant used the VISA mark in commerce. However, in that order,

13  this court neglected to discuss an additional requirement under the commercial use element

14  that "the mark used by the alleged diluter must be identical, or nearly identical, to the

15  protected mark." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 905 (9th Cir. 2002).

16  In order to be nearly identical, two marks "must be similar enough that a significant segment

17  of the target group of customers sees the two marks as essentially the same." *Jada Toys, Inc.*

18  *v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008) (internal quotation marks omitted).

19      This requirement is similar to the first factor listed by the TDRA to determine

20  whether "dilution by blurring" has occurred: "[t]he degree of similarity between the mark or

21  trade name and the famous mark." *See* 15 U.S.C. § 1125(c)(2)(B)(i). While the TDRA

22  factor would appear to abrogate the judicial gloss put upon the commercial use element that

23  "the mark used by the alleged diluter must be identical, or nearly identical, to the protected

24  mark," the court is nonetheless compelled to consider it under *Jada Toys*. *See Jada Toys*,

25  518 F.3d at 634.

26

1      As noted by this court in its October 22, 2002, order, "There is also no dispute that

2  the only difference between the two marks is JSL's addition of a letter 'e' as a prefix, which

3  is commonly used to denote the online version of a business."[5]  (Oct. 22, 2002, Order (#102)

4  at 22:4-7); *see also Savin Corp. v. The Savin Group*, 391 F.3d 439, 454 (2d Cir. 2004) ("We

5  emphasize, however, that it is the identity of the marks themselves that is germane in the

6  dilution context, and the modifying of the mark–by adding one or more generic descriptors to

7  the mark in a website address, for example–will not necessarily defeat a showing that the

8  marks themselves are identical in specific contexts.").  Accordingly, the court concludes as a

9  matter of law that Defendant used the VISA mark in commerce.

10          **4.      Period of Defendant's Use**

11      The TDRA also requires that Defendant commenced use of the VISA mark "at any

12  time after the owner's mark has become famous."  15 U.S.C. § 1125(c)(1).  This element is

13  virtually identical to the FTDA's requirement that a defendant's use of the famous mark must

14  begin "after the mark has become famous . . . ."  *See* 15 U.S.C. § 1125(c)(1) (2000).  In its

15  October 22, 2002, order, the court found this element was met under the FTDA.   (Oct. 22,

16  2002, Order (#102) at 20:1-13.)  Therefore, that finding is the law of the case and will be

17  applied to Plaintiff's present motion for summary judgment.

18          **5.      Likelihood of Dilution by Blurring**

19      The last element this court must consider under the TDRA is whether use of the mark

20  "is likely to cause dilution by blurring or dilution by tarnishment of the famous mark,

21  regardless of the presence or absence of actual or likely confusion, of competition, or of

22  actual economic injury."  15 U.S.C. § 1125(c)(1) (2006).  This element is somewhat similar

23  to the FTDA's requirement that the defendant's use of a famous mark "causes dilution of the

24  distinctive quality of the mark . . . ."  15 U.S.C. § 1125(c)(1) (2000).  However, the TDRA is

25

26          [5]*See, e.g.*, <etoyota.com>, <ehonda.com>, <ekelloggs.com>, and <enordstrom.com>.

1   markedly different from the FTDA in that the TDRA sets out six nonexclusive factors a court

2   may consider in determining whether a trademark is likely to cause dilution by blurring.  *See*

3   15 U.S.C. § 1125(c)(2)(B) (2006).  Accordingly, the court will not apply the law of the case

4   doctrine to this element.

5        As already stated, the TDRA sets forth six factors a court may consider in

6   determining whether a mark or trade name is likely to cause dilution by blurring.  The first

7   factor is "[t]he degree of similarity between the mark or trade name and the famous mark."

8   15 U.S.C. § 1125(c)(2)(B)(i).  As stated above in connection with the commercial use

9   element, the only difference between the VISA and EVISA marks is Defendant's addition of

10   the letter 'e' as a prefix, which commonly denotes the online version of a business.

11        Defendant argues that the degree-of-similarity factor does not weigh in Plaintiff's

12   favor because "'evisa' is easily and immediately distinguishable, both visually and

13   intellectually, from '*VISA*' in the context in which the two marks <u>actually appear</u>."  (Opp'n to

14   Mot. for Summ. J. (#213) at 14:19-20.)  Defendant also asserts that when EVISA is taken in

15   the context of the <evisa.com> website, that mark is remarkably dissimilar from the VISA

16   mark.

17        Defendant's argument fails to recognize that Defendant's use of the EVISA mark is

18   not limited to the content of Defendant's homepage.  Rather, Defendant also uses EVISA as

19   its website's domain name, that is, <evisa.com>.  Thus, Defendant has used the VISA mark

20   in a setting where context-specific factors, such as the appearance of Defendant's homepage,

21   are largely irrelevant.  *See Savin Corp. v. The Savin Group*, 391 F.3d 439, 453-54 (2d Cir.

22   2004) (finding that while the defendant's use of the SAVIN mark may not be identical in the

23   context of a web page, the defendant's use of the mark may be identical when utilized as a

24   domain name).   As such, the VISA and EVISA marks are very similar.

25        The second factor is "[t]he degree of inherent or acquired distinctiveness of the

26

1   famous mark." 15 U.S.C. § 1125(c)(2)(B)(ii).  As discussed above, the VISA mark is

2   arbitrary when used in connection with Plaintiff's goods and services; thus, the mark is

3   inherently distinctive. *See supra* Part III.B.2.  The court further finds that the degree of this

4   inherent distinctiveness is moderately high.  "Visa" is defined as "an endorsement made on a

5   passport by the proper authorities (as of the country the bearer wishes to enter) denoting that

6   it has been examined and that the bearer is permitted to proceed." *Webster's Third New*

7   *International Dictionary* 2556 (1981).  While in some sense the word "visa" could connote

8   the ability to purchase–that is, one typically will have difficulty traveling without money–and

9   thus be suggestive of Plaintiff's goods and services, the court still finds the VISA mark is

10  more appropriately labeled as arbitrary.  As such, the court concludes that the VISA mark has

11  a moderately high level of inherent distinctiveness.

12      The third factor is "[t]he extent to which the owner of the famous mark is engaging in

13  substantially exclusive use of the mark."  15 U.S.C. § 1125(c)(2)(B)(iii).  Plaintiff argues that

14  "Visa International is engaging in substantially exclusive use of the *Visa* mark.  Indeed, JSL

15  has failed to present any evidence of any third-party use of *Visa* as a mark by others, let alone

16  substantial third-party use." (Mot. for Summ. J. (#211) at 17:8-10.)  This argument is

17  misplaced because, as the moving party, it is Plaintiff's burden to show the absence of a

18  genuine issue of material fact.  Accordingly, this factor does not weigh in favor or against a

19  finding that Defendant's use of the EVISA mark has likely caused dilution by blurring.

20      The fourth factor is "[t]he degree of recognition of the famous mark."  15 U.S.C.

21  § 1125(c)(2)(B)(iv).  This factor weighs strongly in favor of a finding of likely dilution.  As

22  stated above, Plaintiff has presented a survey showing 99 percent of respondents throughout

23  the United States were aware of the VISA brand of payment cards.  The same study also

24  showed that 85 percent of U.S. consumers identified VISA when asked to think of brand

25  names for payment cards.  Given this evidence, the court finds that VISA has a very high

26

1   degree of recognition.

2       The fifth factor is "[w]hether the user of the mark or trade name intended to create an

3   association with the famous mark." 15 U.S.C. § 1125(c)(2)(B)(v).  Plaintiff does not offer

4   any evidence that Defendant intended to create an association with the VISA mark.

5   Defendant, on the other hand, offers evidence that the EVISA mark was conceived as a

6   contraction of the words "Eikaiwa Visa," which Joseph Orr, Defendant's sole shareholder,

7   used as the name of his English-language school in Japan.  (Orr Decl. (#59) at ¶ 3.)  Orr

8   asserts that he used the words "Eikaiwa Visa" because Eikaiwa means English in Japanese,

9   and "visa" connotes "the ability to travel, both linguistically and physically, through the

10  English-speaking world." (*Id.*)  As such, this factor weighs against a finding that

11  Defendant's use of the EVISA mark is likely to cause dilution by blurring.

12      The sixth factor is "[a]ny actual association between the mark or trade name and the

13  famous mark." 15 U.S.C. § 1125(c)(2)(B)(vi).  Plaintiff offers a market research survey

14  authored by Dr. Edward Blair showing that 73 percent of survey respondents mentioned

15  VISA when asked whether EVISA reminded them of another brand name.  (Blair Report

16  (#211), Ex. C at 6.)

17      Defendant responds to the Blair survey by arguing it is inadmissible under Federal

18  Rule of Evidence 702.  Rule 702 provides the following:

19      If scientific, technical, or other specialized knowledge will assist the trier of fact
        to understand the evidence or to determine a fact in issue, a witness qualified as
20      an expert by knowledge, skill, experience, training, or education, may testify
        thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
21      sufficient facts or data, (2) the testimony is the product of reliable principles and
        methods, and (3) the witness has applied the principles and methods reliably to
22      the facts of the case.

23  In support of its contention that the Blair survey is inadmissible, Defendant argues that the

24  survey "completely removed the context within which the survey responder could relate the

25  image to anything and was specifically not reproduced in the context of how they would have

26
                                    15

1   come to the page reflecting the 'evisa' image." (Opp'n to Mot. for Summ. J. (#213) at 13:3-

2   5.)  Defendant further argues that the survey is not based upon sufficient facts or data

3   because it was "presented only to business owners, and not to consumers, which is not

4   comparable to the relevant population–JSL's consumer/customers." (*Id.* at 13:14-15.)

5        Defendant's arguments are without merit.  The Blair survey in fact did present the

6   EVISA mark in the context of Defendant's website as it appeared on February 1, 2001, forty-

7   two days before this lawsuit began.  (Blair Report (#211), Ex. C at 3.)  Thus, the Blair survey

8   presented the EVISA mark in its proper context.  Moreover, Defendant has provided no

9   authority for the proposition that a scientifically valid survey must replicate the process by

10  which a person will come into contact with the relevant mark.  In contrast, Plaintiff presented

11  evidence that accepted scientific methods require only that consumers are shown the mark at

12  issue in the context in which it appears in the marketplace.  (Blair Report (#211), Ex. C at 4-

13  5; Blair Dep. (#216), Ex. A at 60:20-62:19)

14       Finally, Defendant cannot complain that Blair's survey was directed at an

15  inappropriate population.  The only evidence provided by Defendant as to the identity of its

16  customers indicates that, with one exception, they are businesses.  (Def.'s Answers to Pl.'s

17  First Set of Interrogs. (#216), Ex. B at 2:10-3:19.)  The Blair survey is therefore admissible

18  under Rule 702 and is strong evidence that there is actual association between the marks.

19       Finally, it is worth noting that the facts of this case are similar to those in *Panavision*

20  *Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998), a trademark dilution case under the

21  FTDA.  In that case, Panavision, a producer of motion picture camera equipment, sought to

22  enjoin the defendant from using the domain name <panavision.com>. *Id.* at 1319.  The

23  Ninth Circuit concluded that the defendant's use of <panavision.com> caused dilution of the

24  PANAVISION mark, reasoning that "[a] significant purpose of a domain name is to identify

25  the entity that owns the web site." *Id.* at 1327.  While the FTDA defined dilution somewhat

26

differently than the TDRA,[6] *Panavision*'s reasoning is still persuasive when applied to the EVISA mark given the common use of the letter "e" to denote the online version of a business.

While it causes the court some pause that Plaintiff has not submitted any evidence regarding the extent to which Plaintiff is engaging in substantially exclusive use of the VISA mark, Plaintiff is correct in noting that the six factors regarding dilution by blurring are discretionary and nonexclusive. Thus, Plaintiff's failure to submit evidence regarding whether it is engaging in substantially exclusive use of the VISA mark is not fatal. Moreover, the court finds this factor should not be weighed heavily against Plaintiff, considering the inherent difficulty of proving the nonexistence of a fact, that is, that there are not others using the VISA mark.

With regard to the fifth factor–whether the user of the mark or trade name intended to create an association with the famous mark–the court agrees with Defendant that the factor weighs against a finding that Defendant has likely caused dilution of the VISA mark. However, the court also agrees with Plaintiff that the degree to which consumers actually associate the VISA and EVISA marks is more important to a finding of likely dilution than Defendant's intent. At bottom, trademark dilution is an objective inquiry into whether an alleged diluter's mark is likely to contribute to the gradual whittling away of a senior mark's value. *See Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 805 (9th Cir. 2002). Therefore, because Plaintiff has made an exceptionally strong showing on the four other factors listed in § 1125(c)(2)(B), the court concludes as a matter of law that Defendant's use of the EVISA mark is likely to cause dilution by blurring of Plaintiff's VISA mark.

---

[6]The FTDA defined "dilution" as "the lessening of the capacity of a famous mark to identify and distinguish goods or services . . . ." 15 U.S.C. § 1127 (2000). By comparison, the TDRA defines the more specific term "dilution by blurring" as the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B) (2006).

1  Defendant has not presented evidence from which a rational fact finder could conclude

2  otherwise.

3  **C. Defendant's Counterclaims**

4  In its motion for summary judgment, Plaintiff also asks this court to dismiss

5  Defendant's counterclaims for trademark infringement.  This court ruled in its February 11,

6  2003, order that Defendant's trademark infringement claims cannot succeed in light of the

7  court's grant of summary judgment to Plaintiff on its trademark dilution claim.  Because

8  Plaintiff has again shown that it is entitled to summary judgment on its trademark dilution

9  claim, the court's previous order is the law of the case and compels this court to again grant

10  Plaintiff summary judgment on Defendant's counterclaims.

11  **D. Remedy**

12  Because Plaintiff has again shown that it is entitled to relief on its trademark dilution

13  claim, the court will apply the law of the case doctrine to grant the same injunctive relief it

14  ordered in its October 22, 2002, order.  That is, Defendant is enjoined from using or

15  registering the EVISA mark and from using the <evisa.com> domain name.

16  **IV.   Conclusion**

17  Plaintiff has met its burden of showing that it is entitled to judgment as a matter of

18  law on its trademark dilution claim.  The evidence Defendant offered in opposition is not

19  sufficient to create a genuine issue of material fact.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

18

1

2

3

IT IS THEREFORE ORDERED that Plaintiff's motion for relief from a final judgment (#226) is GRANTED.  This court's December 27, 2007, order is amended accordingly.

4

IT IS SO ORDERED.

5

6

DATED this 15th day of December 2008.



7

_____

8

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

19